UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARLA J. BROCK,                          :        Case No. 3:10-cv-179
                                         :
        Plaintiff,                       :        Judge Timothy S. Black
                                         :
vs.                                      :
                                         :
MICHAEL J. ASTRUE,                       :
Commissioner of the Social               :
Security Administration,                 :
                                         :
        Defendant.                       :

**DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS
NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS REVERSED;
(2) THIS MATTER IS REMANDED TO THE ADMINISTRATIVE LAW
JUDGE UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g);
AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" except for a

closed period of time and therefore not otherwise entitled to disability insurance benefits

("DIB"). (*See* Administrative Transcript ("Tr.") 32).

## I. BACKGROUND

On August 30, 2004, Plaintiff protectively filed an application for DIB, alleging

she became disabled on August 15, 1998, as a result of a kidney condition. (Tr. 55). Her

application was denied initially and on reconsideration. (Tr. 43, 42). Plaintiff timely

requested a *de novo* review of her claims by ALJ. (Tr. 45) A hearing on the matter was

held before ALJ Thomas R. McNichols, II, on August 14, 2007. Plaintiff, represented by

counsel, a medical expert, and a vocational expert appeared and testified. (Tr. 303-45).

On November 27, 2007, the ALJ issued a decision finding Plaintiff disabled from December 1, 2001, through May 5, 2005, but otherwise not. (Tr. 12-32). Plaintiff sought review of the unfavorable portion of the decision by the Appeals Council, which denied the request on March 23, 2010, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7). Plaintiff thereafter brought this action in federal court under 42 U.S.C. § 405(g) for judicial review of the part of Commissioner's final decision denying her DIB.

The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of his decision, were as follows:

1. The claimant met the insured-status requirements fo the Social Security Act as of December 1, 2001, the date the claimant became disabled.

2. The claimant has not engaged in substantial gainful activity since August 15, 1998, the alleged disability onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. At all times relevant to this decision, the claimant has had the following "severe" impairment: membranous nephropathy (20 CFR 404.1520(c)).

4. From December 1, 2011, through May 5, 2005, the period during which the claimant was disabled, the severity of the claimant's membranous nephropathy medically equaled the criteria of sections 6.06A of 20 CFR Part 404, Subpart P, Appendix 1, the so-called "Listing of Impairments" (20 CFR 404.1520(d)).

5. The claimant was under a "disability," as defined by the Social Security Act, from December 1, 2001, through May 5, 2005 (20 CFR 404.1520(d)).

6.  Medical improvement occurred as of May 6, 2005, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).

7.  Beginning on May 6, 2005, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1) (20 CFR 404.1594(f)(2)).

8.  The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals a listing (20 CFR 404.1594(c)(3)(i)).

9.  After careful consideration of the entire record, the undersigned finds that, from the alleged disability onset date of August 15, 1998, through November 30, 2001, and beginning on May 6, 2005, the claimant has had the residual functional capacity to perform work activities at the light exertional level, subject to the following limitations: lifting limited to 10 pounds; no climbing of ropes, ladders or scaffolds; must be permitted to alternate between sitting and standing at 30-minute intervals; no exposure to hazards, such as moving machinery or unprotected heights; and no repetitive use of foot controls.

10. Beginning on May 6, 2005, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

11. The claimant was born on September 28, 1971, and has been a "younger individual," as defined for Social Security purposes, at all times relevant to this decision (20 CFR 404.1563).

12. The claimant has more than a high school education and is able to communicate in English (20 CFR 404.1564).

13. From August 15, 1998, through November 30, 2001, and beginning on May 6, 2005, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

14. From August 15, 1998, through November 30, 2001, and beginning on May 6, 2005, considering her age, education, work experience and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

15. The claimant is "not disabled" from August 15, 1998, through November 30, 2001, and her subsequent period of disability, extending from December 1, 2001, through May 5, 2005, ended on May 6, 2005 (20 CFR 404.1594(f)(8)).

Plaintiff makes three appellate arguments: (1) that the ALJ erred in finding that Plaintiff did not equal Listing 6.06A until December 2001; (2) that, even if Plaintiff's condition ceased equaling Listing 6.06A in May 2005, the ALJ erred in finding that Plaintiff could at that point sustain work activity at any level of exertion; and (3) if reversal or remand cannot be made on this record, in the alternative, that a Sentence Six remand is required for the taking of new evidence, submitted but not considered by the ALJ.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence and whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

-4-

the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence

also exists in the record upon which the ALJ could have found plaintiff disabled. As the

Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal
> merely because substantial evidence exists in the record to
> support a different conclusion. The substantial evidence
> standard presupposes that there is a "zone of choice" within
> which the Commissioner may proceed without interference
> from the courts. If the Commissioner's decision is supported
> by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The ALJ must also apply the correct legal standards and follow the

Commissioner's own regulations. Failure to do so will typically require reversal,

notwithstanding that the ALJ's opinion is supported by substantial evidence. *Bowen*, 478

F.3d at 746.

The claimant bears the ultimate burden to prove by sufficient evidence that she is

entitled to DIB. 20 CFR § 404.1512. That is, she must present sufficient evidence to

show that, during the relevant time period, she has the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A).

**A.**

For her first assignment of error, Plaintiff asserts that the ALJ erred in finding that

Plaintiff did not meet or equal Listing 6.06A until December 1, 2001, even though

laboratory findings were consistent with the Listing from at least January 2001, which the

medical expert, whose opinion the ALJ relied upon, appears to have overlooked.

Listing 6.06A refers to a type of kidney problem. To meet or equal this Listing,

Plaintiff must have nephrotic syndrome, with anasarca, persisting for at least 3 months

despite prescribed therapy, with serum albumin of 3.0 grams per 100 milliliters or less

and proteinuria of 3.5 grams or greater per 24 hours. *See* Listing 6.06A, Appendix 1 to

Subpart P, Part 404. Listing 6.00C that as sufficient evidence, "[t]he record should

include laboratory findings such as . . . albumin values, obtained on more than one

examination over the 3-month period." Plaintiff bears the burden of proof and must show

that she satisfies every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 525

(1990).

Plaintiff concedes that she did not have anasarca and thus does not meet Listing

6.06A. (Doc. 12 at 10). Instead, she argues that her condition equals it at least as of

January 2001. This is consistent with the testimony of Dr. Boyce, the medical expert

called by the ALJ, Plaintiff asserts. Dr. Boyce testified that Plaintiff's ailment equaled

Listing 6.06A beginning December 1, 2001, based on lab results at that time showing an

albumin level of 2.9 and a proteinuria of just over 5 grams. The ALJ relied chiefly on this

opinion in finding Plaintiff disabled as of that date but not before. In doing so, the ALJ

-6-

explicitly stated that his decision was "based on the significantly elevated protein levels [(proteinuria)] - greater than 3.5 grams, and concurrent low albumin levels of less than 3.0." (Tr. 25). Plaintiff argues that she had similar laboratory readings earlier than December 1, 2001, which Dr. Boyce never specifically referenced or explained.

The Commissioner argues that Dr. Boyce did review the evidence at issue, but rightly disregarded it in forming his opinion. The Commissioner notes that Dr. Boyce, while not specifically citing the lab results in question, discussed treatment notes from the same time period and cited to the exhibit that contained the data alleged by Plaintiff to have been neglected by Dr. Boyce. (Doc. 16 at 9; Tr. 326-27, 329-30, 333-34). Furthermore, Dr. Boyce discussed the requirement that Plaintiff have the requisite protein and albumin levels for three consecutive months to meet Listing 6.06A. (*Id.*; Tr. 331). Therefore, the Commissioner argues, Dr. Boyce (and, by extension, the ALJ) was entirely reasonable, indeed correct, in disregarding the prior lab reports and setting Plaintiff's disability at December 1, 2001.

The Commissioner's arguments can be distilled to a single, discreet syllogism: Listing 6.06A requires three consecutive months of protein levels above 3.5 grams; Plaintiff's protein levels were below 3.5 grams when she was tested on April 7, 2001; therefore, Plaintiff's illness did not equal Listing 6.06A in January 2001 and she was not disabled at that time. (It is undisputed that Plaintiff's albumin levels were sufficiently low during the relevant time period).

-7-

While the April 7, 2001 lab results show Plaintiff had nearly the levels confirmed by Dr. Boyce as sufficient to equal Listing 6.06A, her protein level was just over 2 grams rather than above 3.5. But by July 10, 2001, her protein level was at nearly 6 grams and on August 24, 2001, it was close to 7 grams, representing two tests within a three month period, as called for by Listing 6.00C. On December 22, 2001, Plaintiff's protein level was still above 5 grams. (Tr. 254; Doc. 17 at 1).

Dr. Boyce's opinion, to which the ALJ acceded, found Plaintiff met the Listing beginning with the December lab tests. (Tr. 329-332). Yet Plaintiff's protein levels were higher in July and August than they were in December. Even if Plaintiff's April numbers were too low to equal Listing 6.06A, under Dr. Boyce's own parameters, it appears Plaintiff's ailment should have equaled the Listing as of at least July 10, 2001, rather than December 1, 2001.

That Dr. Boyce did not address this inconsistency shows one of two things: that he did not consider all of the relevant, indeed important, data in rendering his opinion or that his opinion is internally contradictory. In either case, by relying principally on Dr. Boyce's opinion in determining the genesis of Plaintiff's disability, the ALJ has committed error and his decision in this regard is not supported by substantial evidence. The ALJ must adequately explain why, despite having similar (more severe, in fact) protein levels in July and August, Plaintiff's circumstances do not equal Listing 6.06A until December 2001. Under the framework accepted by the ALJ, it appears Plaintiff should have been deemed disabled beginning July 10, 2001, rather than December 1st.

-8-

An explanation for the discrepancy is required.

**B.**

For Plaintiff's second assignment of error, she claims that the ALJ erred in finding that Plaintiff was able to sustain work activity at any level of exertion as of May 2005, when her condition ceased to equal Listing 6.06A. Plaintiff argues that, irrespective of whether she met the Listing at that time, she was then, and continues to be now, disabled. Plaintiff asserts that the ALJ found that her disability abated due to his improper analyses regarding Plaintiff's treating physicians' opinions and Plaintiff's own credibility concerning the severity of her symptoms.

**1.**

At issue are the opinions of Plaintiff's treating nephrologist, Dr. Doerr, and her treating family physician, Dr. Reid. Plaintiff claims the opinions were improperly discounted by the ALJ, resulting in the ALJ's decision finding Plaintiff not disabled.

20 CFR § 404.1527 guides the ALJ in weighing treating physician opinion. Generally, the opinion of a treating physician is given greater weight than that of a non-treating physician. 20 CFR § 404.1527(d)(1). This is because treating physicians:

> are likely to be the medical professionals most able to provide
> a detailed, longitudinal picture of [the claimant's] medical
> impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual
> examinations, such as consultative examinations or brief
> hospitalizations.

20 CFR § 404.1527(d)(2).

The ALJ must give a treating physician's opinion controlling weight if he finds it "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* If a treating physician's opinion is not given controlling weight, the ALJ must calculate the deference it deserves by applying certain factors, including: the length of the treatment relationship and the frequency of examination; the extent of the treatment relationship; the nature and extent of the relevant evidence that the treating physician presents supporting his opinion; the consistency of the opinion with the record as a whole; the treating physician's specialization; and any other factor the claimant presents that tends to support or contradict the opinion. 20 CFR § 404.1527(d)(2)-(6). Importantly, however, whether a claimant meets the statutory definition of "disability" is an issue reserved to the Commissioner, and a treating physician's opinion on that discreet matter is essentially irrelevant. SSR 96-5p.

Moreover, when the ALJ denies benefits in spite of a treating physician's opinion of disability, the ALJ's decision "must contain specific reasons for the weight accorded the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p. This rule requires an ALJ to explain his decision to a claimant who

-10-

may not otherwise understand why he is being denied disability when his own doctor considers him disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Furthermore, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

Dr. Doerr in 2005 and Dr. Reid in 2005 and 2006 both opined that Plaintiff was disabled and unemployable as a result of her severe kidney problems. (Tr. 206-7, 209-10, 159, 155). The ALJ correctly cited 20 CFR 404.1527 and analyzed Dr. Doerr's and Dr. Reid's opinions according to its terms. (Tr. 28). The ALJ determined that neither was worthy of controlling weight, reasoning that both were unsupported by objective laboratory findings and inconsistent with the rest of the record, including the testimony of Dr. Boyce. (*Id.*). The ALJ also, seemingly simultaneously, determined that their opinions were granted no weight at all, or "cannot be accepted," as the ALJ put it. (*Id.*). The ALJ did not cite the factors contained in § 404.1527(d)(2)-(6) for calculating the correct weight. He did note that the doctors have few to no treatment notes for the time period in question, and that their opinions are contradicted by Dr. Boyce. (*Id.*). He also remarked that their ultimate opinions - that Plaintiff qualifies for Social Security disability - are beyond their ken and solely the province of the ALJ. (*Id.*).

Irrespective of the accuracy of the opinions, the ALJ's analysis regarding the ultimate weight accorded to the treating physicians' assessments was wholly lacking. In addition to failing to cite the relevant factors of § 404.1527(d)(2)-(6), the ALJ does not appear to have employed them in his analysis either. This is important, particularly for Dr. Doerr, whose opinion, in light of his credentials and treatment record, deserved a

significantly more trenchant review.

Dr. Doerr had a significant treatment relationship with Plaintiff, lasting nearly a decade. She has many treatment notes and she presented competent evidence and a cogent narrative to buttress her opinion. Though there may be question whether Dr. Doerr's treatment notes and the rest of the record are consistent with her opinion, the ALJ's evidence - that her opinion conflicts with reviewing expert Dr. Boyce's opinion - is, alone, underwhelming. Finally, the fact that Dr. Doerr is a nephrologist certainly lends credence to her opinion regarding Plaintiff's kidney disease (in contrast to Dr. Boyce, who is an internist). These issues, which hew closely to the § 404.1527(d)(2)-(6) factors, should have been addressed by the ALJ. While Dr. Reid's opinion is likely deserving of less deference, the ALJ nonetheless did not adequately explain why. In short, the ALJ's decision regarding the weight accorded to Plaintiff's treating physicians' opinions is not supported substantial evidence and is reversed.

## 2.

In addition to arguing that the ALJ improperly dismissed her treating physicians' opinions, Plaintiff also argues, under her second assignment of error, that the ALJ erred in assessing her credibility. Plaintiff testified that fatigue was the primary disabling symptom she experienced. (Tr. 323). The ALJ determined that "[Plaintiff's] statements concerning the intensity, duration and limiting effects of [her] symptoms are not entirely credible, particularly during the time period [at issue in the matter before this Court]."

(Tr. 30). The ALJ continued: "in hearing her testimony, the undersigned [ALJ] perceived that [Plaintiff] greatly exaggerated her symptoms and inabilities, while minimizing her activities of daily living." (Tr. 30).

In light of this Court's decision reversing the ALJ's analysis of Plaintiff's treating physicians' opinions, and since those opinions relate directly to the severity of Plaintiff's symptoms, and thus the veracity of Plaintiff's testimony regarding her symptoms, it is impossible to determine the propriety of the ALJ's decision concerning Plaintiff's credibility at this time. Therefore, the ALJ's decision on this issue is reversed and must be revisited following an appropriate assessment of the treating physician opinion in the case. Furthermore, after properly assessing the treating physician opinion and Plaintiff's credibility, the Commissioner shall then reevaluate whether Plaintiff's disability should be considered to have ceased as of May 2005 or whether it continues to the present.

## C.

For her third assignment of error, Plaintiff argues that, if reversal or remand cannot be made on this record, in the alternative, a Sentence Six remand is required for the taking of new evidence, submitted but not considered by the ALJ. Because remand is made on this record, this assignment of error is moot.

## III.

The fourth sentence of 42 U.S.C. § 405(g) authorizes the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

-13-

reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand empowers the district court to "order the [Commissioner] to consider additional evidence on remand to remedy a defect in the original proceedings, a defect with caused the [Commissioner's] misapplication of the regulations in the first place." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994).

The ALJ's support for beginning Plaintiff's closed period of disability in December 2001, rather than at least July, is incongruous. Additionally, his analysis in regarding the weight to be accorded Plaintiff's treating physicians' opinions was inadequate. Neither decision was supported by substantial evidence. In both cases, remand is required.

**IV.**

For the foregoing reasons, Plaintiff's first and second assignments of error are well taken. This case is **REMANDED** under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner shall discern and present a coherent rationale behind the onset date of Plaintiff's disability. The Commission shall also properly assess Dr. Doerr's and Dr. Reid's treating source opinions, submitting them to the various factors under 20 CFR § 404.1527(d)(2)-(6), and thoroughly explaining the reasons for the weight they are ultimately granted, per Soc. Sec. R. 96-2p. In addition, the Commissioner shall reevaluate Plaintiff's credibility regarding the severity and effect of her symptoms in light of the weight ultimately accorded the treating physician opinion. Finally, after doing so, the Commissioner shall determine whether, and if so, when, Plaintiff's disability has abated.

**IT IS SO ORDERED.**

Date: ___6/28/11___          ___Timothy S. Black___
                            Timothy S. Black
                            United States District Judge

-15-